UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SHANTAVIA T. SPIKES,                                                    Plaintiff

v.                                                 Civil Action No. 3:24-cv-434-RGJ-CHL

HUMANA INC.                                                            Defendant

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Humana Inc.'s ("Humana") Motion for Summary Judgment. [DE 67]. *Pro se* Plaintiff Shantavia T. Spikes, ("Spikes") filed a late response. [DE 75]. Humana timely replied. [DE 76]. On the same day as her response, Spikes filed three additional motions. A motion for leave to "Submit a Response that Extends Page Limits" [DE 77], a motion for review "on the basis of Plain Error" [DE 78] and an updated motion for review, asserting the same claim as DE 78. [DE 79]. Humana collectively responded [DE 80], and the time for Spikes to reply has lapsed. These matters are ripe for adjudication. For the reasons below, the Court **DENIES** Spikes's motions [DE 77; DE 78; DE 79] and **GRANTS** Humana's motion for summary judgment. [DE 67].

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Humana is a for-profit healthcare provider based in Louisville, Kentucky. [DE 2 at 71]. Humana maintains several policies prohibiting workplace harassment and discrimination. [DE 66-1 at 706 (Harassment Policy)]. Humana also maintains several internal policies, such as a "Critical Offenses" policy, that allows for the termination of employees who commit certain offenses. [DE 66-2 at 719 (Critical Offenses Policy)]. Offenses classified as a "Critical Offense" include interfering with the performance of others, refusal to perform assigned duties, and undermining management. [*Id.*].

1

In 2014, Humana hired Spikes in a customer-service role, specifically, as a Patient Financial Services Specialist. [DE 66, Dep. S. Spikes, at 418]. Spikes's job duties included advocating for patients on calls with doctors, pharmacists, and drug manufacturers. [*Id.* at 421-22]. She worked at Humana's call center in Springdale, Ohio. [*Id.*]. In 2015, Spikes was promoted to Patient Financial Services Lead. [*Id.* at 424]. And in 2017, Spikes was promoted again to Pharmacy Front Line Leader. [*Id.*]. Although this was her first "supervisory" role with Humana, it was not classified as a "director" role. [*Id;* DE 67-1, Dec. of Shelley Duke, at 757].

A primary basis of this lawsuit stems from two "incident[s]" with Kyle Conatser ("Conatser"), a coworker of Spikes. [DE 1-1 at 6]. Conatser and Spikes worked together while Spikes was on the Patient Financial Services team. [DE 66 at 457]. Before the alleged incidents, Conatser was Spikes "go-to guy" when working together. [*Id.* at 464].

The first incident occurred during the summer of 2019, when Spikes asked Conatser if he was looking at her chest. [*Id.* at 470]. Conatser indicated that he was not looking at her chest, but was looking at one of Spikes's piercings. [*Id.* at 472]. Spikes was "not offended by his answer" and believed him. [*Id.* at 482]. The second incident occurred when Conatser allegedly told Cathi Henton ("Henton"), another Humana associate, that he and Spikes "would be together" if he were not married. [*Id.* at 474-75]. This comment was made to Henton outside of work, and sometime in early 2019. [*Id.*]. These comments were never made directly to Spikes. [*Id.*]. After learning about the statement, Spikes had "no concerns" over the comments and brushed them off. [*Id.* at 488].

After these incidents, in September 2019, Spikes applied, and was hired, for a new role at Humana, Channel Development Specialist 2 ("CDP"). [*Id.* at 431]. In this role, instead of customer service, Spikes was involved in "behind the scenes work" to make sure Humana's operations team could run "without any administrative hiccups." [*Id.*]. She reported to Kristine Bryant ("Bryant")

2

and Ben Shaw "(Shaw"). [*Id.* at 438]. This role was originally in the office but after COVID-19, it transitioned to a remote position. [*Id.* at 434]. Along with transitioning to remote work, in 2020, Spike began to report directly to Shelley Duke ("Duke") and did so until her termination. [*Id.* at 446-47]. Duke awarded Spikes two raises throughout her time as her supervisor, an 8% raise in 2021 and an 11% raise in 2022. [*Id.* at 449-50].

In Spikes's new role with CDP, she no longer worked with Conatser. [*Id.* at 462]. She has not spoken to him since 2020. [*Id.*]. And although the incidents with Conatser occurred in 2019, Spikes did not report either of situations to Humana until June 2022. [DE 1-1 at 6; DE 66 at 533]. Spikes also confirmed that she never alerted Duke about either of these issues at any point. [DE 66 at 511]. Duke corroborated this, stating that she only "recently became aware" of Conatser's comments from the "current lawsuit." [DE 67-1 at 754-55].

A separate basis for this lawsuit stems from Spikes's claims that Bryant gossiped and/or harassed Spikes. [DE 1-1 at 6]. Bryant and Spikes were friends outside of work and had many mutual friends. [DE 66 at 512].

In 2020, while Spikes was on her new CDP team, a position on the team became available. [DE 67-1 at 754]. Conatser applied for the role. [*Id.*]. Duke, without knowledge of the prior incidents between Conatser and Spikes, solicited information about Conatser from her current team members, including both Spikes and Bryant. Spikes refused to discuss his qualifications, or her prior incidents with Conatser and instead "left it to [others]" regarding his hiring. [DE 66 at 496]. Duke decided not to hire Conatser based on an unrelated disciplinary action, which Duke considered disqualifying. [DE 67-1 at 754].

In her complaint, Spikes alleges that during this hiring process, Bryant suggested to Duke that Spikes and Conatser had a relationship. [DE 66 at 489]. Duke denies this ever occurred. [DE

3

67-1 at 754]. Spikes later admitted that she did not know what Bryant told Duke, and that both Bryant and Duke have denied that anything relating to Conatser and Spikes was ever mentioned. [DE 66 at 495-97]. Instead, Spikes bases this accusation against Bryant on unnamed "mutual friends" from "the streets." [*Id.* at 498-99].

Spikes further believes that Bryant was discussing her dating life at work. [DE 1-1 at 6]. Spikes assumes, without evidence, that Bryant was speaking about her because unnamed people gave Spikes "hints" that she was being spoken about. [DE 66 at 523]. Spikes, however, admits that she never heard Bryant "say anything inappropriate about [her]." [*Id.*]. Spikes later mentions that Bryant spoke to Shaw about her. [*Id.* at 519]. However, Spikes's only evidence is that she had a "feeling" Bryant spoke with Shaw. [*Id.*]. Similar to her incidents with Conatser, Spikes never reported these incidents to Duke. [DE 66 at 523; DE 67 at 1 at 754-55].

In September 2020, Duke posted a job opening for a "Pharmacy Contracting Lead." [DE 67-1 at 755]. The role specifically required two years of contracting experience. [*Id.*]. Although not having the required experience, Spikes applied for the position with only one year of experience. [DE 66 at 538]. Only one other person with the requisite experience applied for the job, but eventually did not accept the position. [DE 67-1 at 755]. As there were no other qualified candidates, Duke closed the position and hired no one. [*Id.*].

After that, Duke and Spikes's relationship began to deteriorate. In February 2022, Duke provided Spikes with an 11% raise. [*Id.* at 756]. Spikes responded by yelling at Duke and asserted that she should have a "lead" role with the team instead of the raise. [*Id.*]. Duke explained that Spikes was not yet performing at that level. [*Id.*]. Spikes in return asserted that she would stop working so hard. [*Id.*]. Following this conversation with Spikes, Spikes became combative and

4

made it difficult for her to work with her team. [*Id.*]. Duke reached out to Humana Human Resources ("HR") for advice.

In June 2022, Spikes, made a formal complaint to Humana regarding Conatser's 2019 comments. [DE 66 at 533-34]. Spikes claimed that she felt she was not hired for the Pharmacy Contracting Lead Job because of this incident. [*Id.*]. As part of the investigation, Spikes spoke with Leslie Overby ("Overby"), Associate Director of HR at Humana. [DE 67-8, Dec. Overby, at 788]. Overby interviewed both Duke and Conatser as part of the investigation. [*Id.*]. Duke stated that Spikes was not selected for the role because she was not qualified for the position. [*Id.*]. HR concluded that Spikes's claim was not validated and dismissed the complaint. [*Id.*].

Over the next few months, Spikes became more combative at work. [DE 67-1 at 754]. She would scream at Duke and abruptly end calls. [*Id.*]. Duke then issued Spikes a "documented coaching." [*Id.*]. The coaching listed several expectations for Spikes, including to "demonstrate professionalism." [*Id.*]. It also included mandatory training courses. [DE 67-6, Final Warning of S. Spikes]. The document stated that if Spikes were not to meet the expectations laid out, she "may be immediately terminated." [*Id.*]. Unfortunately, Spikes and Duke did not improve their relationship. Spikes admitted that the relationship had "deteriorated," and that Spikes was "checked out" of work by November 2022. [DE 66 at 588-89].

In November 2022, Duke issued a Final Warning to Spikes. [DE 67-1 at 758]. The Final Warning stated that Spikes continued to "hinder collaborative communication by not engaging in collaborative discussions," which Spikes admitted as true. [DE 67-6, Final Warning, at 771; DE 66 at 590]. The Final Warning asserted that if Spikes did not meet the stated goals laid out in the Final Warning, she would be terminated. [DE 67-1 at 758].

Also in November 2022, Duke posted an opening for a Senior Pharmacy Contracting Professional. [DE 67-1 at 757-58]. Spikes applied. [*Id.*]. Duke did not select Spikes for the role. [*Id.*]. Duke stated that Spikes did not have the requisite experience for the role and that the Final Warning was disqualifying. [*Id.*]. Instead, Duke hired an external candidate, James Mares ("Mares"). [*Id.*]. Mares had significant experience working in director level positions, of which Spikes did not have. [*Id.*].

In January 2023, Spikes decided to take a two-month leave of absence. [DE 66 at 599]. When Spikes returned, Duke requested to speak with her in an effort to rectify their relationship. [*Id.*]. Spikes acknowledged that she became combative during the meeting and told Duke she did not like speaking to her. [*Id.* at 612]. When Duke tried to speak, Spikes stated, "I'm not hearing it. I'm not hearing it. I'm not hearing it." [*Id.* at 617]. Duke reported this call immediately to HR. [DE 67-1 at 758].

In March 2023, per company policy, HR put Spikes on paid administrative leave and investigated her behavior. [DE 67-8 at 787]. HR interviewed Spikes to discuss her most recent incident with Duke. [*Id.*]. During this interview, Spikes admitted that she interrupted Duke multiple times and told her she did not like to speak with her. [*Id.*]. At the conclusion of the investigation, HR concluded that Spikes violated both Humana's Critical Offenses Policy and Spikes's Final Warning. [*Id.*]. Humana determined that Spikes had been engaging in conduct that was "detrimental to operations," "interfering with Ms. Duke's work," "being insubordinate," and violating the express term that "no additional instances of improper conduct or behavioral issues may occur." [*Id; DE 67 at 739]. Because of these violations, Humana terminated Spikes on March 31, 2023. [*Id.*].

On July 28, 2023, Spikes filed a charge of discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). [DE 1-1 at 23-24]. The Charge alleged sex discrimination, race discrimination, age discrimination, and retaliation. [*Id.*]. After issuance of a right to sue letter, Spikes filed a *pro se* complaint alleging only claims of sex discrimination, race discrimination, retaliation, and harassment. [DE 1-1]. Age discrimination was not included. [*Id.*]. The Court reviewed the complaint pursuant to 28 U.S.C. § 1915(e). [DE 9]. The Court allowed the matter to proceed with Title VII claims for discrimination based on race, color, and sex for harassment and failure to promote, and separately, for retaliation against Spikes for filing the 2022 HR Complaint. [DE 9 at 20].

Both parties have participated in discovery. Spikes had her deposition taken on December 5, 2025. [DE 66]. The parties have continuously filed status reports and Spikes has been an active litigant, filing multiple motions for emergency hearings and requests to exceed page limits. [DE 47; DE 63]. The Court set a discovery deadline of October 17, 2025, and a dispositive motion deadline of December 16, 2025. [DE 38].

On August 6, 2025, Spikes moved for summary judgment. [DE 52]. Humana responded. [DE 55]. The Court denied the order and stated that "Spikes may file a motion for summary judgment after discovery is complete and in compliance with the dispositive motion deadline in the scheduling order." [DE 59 at 323].

On December 16, 2025, Humana timely moved for summary judgment, asserting that all claims fail as a matter of law. [DE 67 at 741]. Past the proper response deadline, on February 5, 2026, Spikes responded to Humana's motion and asserted that the motion should be denied "on the basis of violating federal rule 56(b)." [DE 75 at 892]. Humana timely replied. [DE 76].

7

Additionally, on February 12, 2026, Spikes filed three concurrent motions: motion for leave for leave to submit a response that extends the page limit, [DE 77]; motion for review on the basis of plain error, [DE 78]; and an updated motion for review, [DE 79]. Humana responded. [DE 80]. Spikes did not reply.

## II.    STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (internal quotation marks omitted)). The nonmovant must do so by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

"When possible, the Federal Rules of Civil Procedure support a preference to resolve a dispute on their merits. *Kanuscewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, n. 4 (6th Cir. 2019); *Phoenix Process Equip. Co., v. Capital Equip. & Trading Co.,* 2022 WL 3365069, at *3 (W.D. Ky. Aug. 15, 2022); *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 661 (S.D. Ohio 2023) ("Where possible, 'it is preferable for courts to decide matters on the merits, rather than on procedural grounds.'") (quoting *Romero v. City of Middletown*, 2021 WL 308149, at *4 (S.D. Ohio Jan. 29, 2021)).

The Sixth Circuit's jurisprudence on abandonment of claims in response to summary judgment is also clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment. *See Brown v. VHS of Michigan, Inc.*,

9

545 F. App'x 368, 372 (6th Cir. 2013); *Hicks v. Concorde Career Coll.,* 449 F. App'x. 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin,* 178 F. App'x. 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.,* 65 F. App'x. 19, 24–25 (6th Cir. 2003); *see also Colston v. Cleveland Pub. Library,* No. 1:12–CV–204, 2012 WL 3309663, at *2 n. 2 (N.D. Ohio Aug. 13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition[] to Defendants' motions for summary judgment"). However, such a failure does not automatically entitle the movant to judgment. *Kemper v. City of Jackson*, Tennessee, No. 1:22-CV-02689-MSN-JAY, 2025 WL 336211, at *6 (W.D. Tenn. Jan. 24, 2025). When a party has not responded, the Court is left with no legal issues to consider on behalf of the non-moving party. Still, a court must determine whether the movant has demonstrated the absence of a genuine dispute of material fact through proper evidentiary designations. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). While a party's failure to respond to specific arguments can indicate abandonment, it does not relieve the court of its duty to ensure that summary judgment is appropriate based on the properly supported material facts cited by the moving party. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403–07 (6th Cir. 1992). The scope of this review, however, is not unlimited. Courts are not required to search the entire record *sua sponte* for genuine disputes of material fact but must examine the evidence properly designated by the moving part to determine whether summary judgment is warranted. *E.g., Street*, 886 F.2d at 1479–80 (citing *Anderson*, 477 U.S. 242; *Celotex Corp.*, 477 U.S. 317; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

10

Lastly, "*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

### III.    SPIKES'S MOTIONS

Before reaching Humana's motion, the Court first addresses Spikes's three pending motions. This Court previously denied Spikes's motion for summary judgment without prejudice, finding it premature and permitting it to be refiled if appropriate on or before the dipositive motion deadline. [DE 52; DE 55; DE 59 at 323]. On December 16, 2025, the deadline to file dispositive motions passed, and Spikes did not file a new, or renewed, motion.

On February 12, 2026, Spikes filed three motions regarding her original motion for summary judgment. In the first motion, Spikes asserts that "[d]ue to the court's error for reasoning of the denied request . . . the plaintiff requests that the court allows the following document to be submitted for review." [DE 77 at 934]. In the next motion, Spikes asks "the court to revisit the judgement [sic] summary order submitted on Augus 6, 2025" under Fed. R. Civ. P. 51(d)[1]. [DE 78 at 937]. In the last motion, Spikes again asks the Court to review the previous summary judgment order on "the basis of plan error." [DE 79 at 994]. Humana responded asserting that the Court should deny Spikes's request for "three reasons." [DE 80 at 1060]. First, Spikes has not identified any "factual or legal error" in the Court's previous order. [*Id.*]. Second, Humana asserts that "there is no substantiative evidence or argument for the Court to reconsider," [*id.*], and third, that the motion to reconsider is "untimely" because the "dispositive motion deadline passed more than two months ago." [*Id.* at 1061].

---

[1] Fed. R. Civ. P. 51(d) does not relate to summary judgment. Fed. R. Civ. P. 51 governs objections to jury instructions and has no bearing on Spikes's request. Still, the Court will treat this as a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e).

11

Out of an abundance of caution for a *pro se* litigant, the Court will treat these as two separate motions. First, the Court will address Spikes's argument that the court "revisit the judgement [sic] summary order submitted on Augus 6, 2025." [DE 78 at 937]. The Court will treat this as a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). Second, the Court will treat Spikes's refiling of her motion for summary judgment as an exhibit to DE 78, as an attempt to refile her motion for summary judgment, which the Court expressly permitted her to do. [DE 59]. The Court will apply the summary judgment standard to that motion.

### A. Motion for Reconsideration

The Federal Rules of Civil Procedure permit litigants subject to an adverse judgment to file a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). *Harvey v. United States*, 2017 WL 89492, at *1 (W.D. Ky. Jan. 9, 2017). The burden of showing entitlement to relief is on the moving party. *Ayers v. Anderson*, 2018 WL 3244410, at *2 (W.D. Ky. July 3, 2018) (citation omitted).

Rule 59(e) is intended to permit a court to "rectify its own mistakes in the period following the entry of judgment." *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982). A court "may alter or amend a prior judgment under Rule 59(e) based on '(1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). A Rule 59(e) motion is not "an opportunity to reargue a case" or raise arguments that could or should have been raised before the court issued the judgment. *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Rule 59(e) motions are "extraordinary and sparingly granted." *Marshall v. Johnson*,

2007 WL 1175046, *2 (W.D. Ky. Apr. 19, 2007); *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 n. 5 (6th Cir. 1982). When a party simply disagrees with a district court's conclusions, the appropriate avenue for relief is to appeal the ruling, not a motion to alter or amend the judgment. *Graham ex rel. Est. of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). And although *pro se* pleadings are held to a less stringent standard, this standard still has limits. *Pilgrim*, 92 F.3d at 416 (6th Cir. 1996); *Bouyer v. Simon*, 22 F. App'x 611, 612 (6th Cir. 2001).

Here, Spikes appears to move for reconsideration on the basis of "plain error of the courts." [DE 78 at 936]. To establish "clear error of law" Spikes must demonstrate that this error was "so egregious that an appellate court would not affirm the judgment." *Breeden v. Exel, Inc.*, 2022 WL 1482525, at *3 (W.D. Ky. Apr. 12, 2022). "A clear error of law occurs where the original ruling 'overlooked or disregarded' some 'argument or controlling authority' or where the moving party 'successfully points out a manifest error[.]'" *Id.* (quoting *United States v. Ladeau*, 2012 WL 5838125, at *2 (M.D. Tenn. Nov. 15, 2012)).

Spikes provides no evidence of a factual or legal error. [*Id.*]. Alerting the Court that it has a made a "plain error" without any legal or factual basis is insufficient and does not demonstrate that the Court has made an error "so egregious that an appellate court would not affirm the judgment." *Riggs v. Wright*, 2026 WL 373088, at *4 (quoting *Breeden,* 2022 WL 1482525, at *3). Further, at the time of its decision, the Court expressly stated that Spikes had the opportunity to move for summary judgment at the close of discovery prior to the dispositive motion deadline. [DE 59 at 323]. Spikes did not. Nor did Spikes request an extension of the dispositive motion deadline. After the deadline passed, Spikes continued to file *other* motions, such as motion to compel, a response to Humana's summary judgment, and the present motion. [*See, e.g.,* DE 70]. Thus, although the Court will construe a *pro se's* filing liberally, it "does not absolve a plaintiff of

13

the duty to comply with the Federal Rules of Civil Procedure." *Jones v. Cabinet for Families & Children*, 2007 WL 2462184, at \*4 (W.D. Ky, Aug. 29, 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

### B.  Motion for Summary Judgment

#### 1.  Good Cause and Prejudice

Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Late summary judgment motions are construed as a request to modify the scheduling order. *Andretti v. Borla Perf. Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (stating that the "district court correctly analyzed the late [summary judgment] motion as a request to modify the scheduling order."). In determining whether the plaintiff has shown good cause under Rule 16(b) for failure to seek leave to amend before the deadline has passed, the court considers whether: (1) the plaintiff has exhibited diligence in trying to meet the scheduling order's requirements; and (2) defendant is prejudiced by amendment. *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). "If a party is delayed in discovering the basis for amending its pleadings due to circumstances beyond its control, it may use that delay as a basis for arguing that a Rule 16(b) order deadline should be extended." *Permasteelisa CS Corp. v. Airolite Co.*, LLC, No. 2:06-CV-0569, 2007 WL 1683668, at \*2 (S.D. Ohio June 8, 2007) (citing *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1173–74 (9th Cir. 2007)). Prejudice to the non-moving party is a relevant consideration, "but the main focus should remain on the moving party's exercise of diligence." *Cooke v. AT&T Corp.*, No. 2:05-CV-374, 2007 WL 188568, at \*2 (S.D. Ohio Jan. 22, 2007) (citing *Andretti,* 426 F.3d at 830).

Here, Spikes barely meets her burden. Construing the *pro se* complaint liberally, the Court reads Spikes's statements that due to "denied requests" by Humana and that "additional facts"

14

were needed, Spikes could not move for summary judgment before the December 16, 2025, deadline. [DE 78 at 937]. Spikes also asserts "ongoing issues" with discovery and "communicating" with Humana. [*Id.*]. Although Humana denies these assertions, out of an abundance of caution, the Court will treat Spikes's assertions as made in good faith as courts are instructed to take "extra care with pro se litigants." *Layman v. UPS, Inc.*, 2019 WL 1966123, *3 (W.D. Ky. May 2, 2019) (quoting F. R. Civ. P. 56(e)(4)).

Further, Humana is not likely prejudiced by allowing Spikes's original motion for summary judgment to be considered on the merits because Humana substantively and timely responded to Spikes's original motion. *Brewer v. Air Prod. & Chem., Inc.,* 2024 WL 3416594, *4 (W.D. Ky. July 15, 2024) (finding no prejudice against the Defendant when considering a late motion because the Defendant had already "responded to the substance of the motion.") And Spikes's renewed motion, DE 78, solely asks the court to "revisit the judgement [sic] summary order on August 6, 2025, based on the original argument." [DE 78 at 937]. Notably, Spikes attaches her original motion for summary judgment to her renewed motion. [DE 78-1; DE 78-2]. Thus, because Humana has already substantively replied to Spikes's original argument in DE 55, the Court finds no prejudice to Humana. *Brewer,* 2024 WL 3416594, *4.

As a result, the Court will review Spikes's original motion, DE 52, on the merits.

### 2. *Merits*

Spikes asks the Court to grant summary judgment on all claims relating to sex discrimination, retaliation, and harassment. [DE 1-1 at 11-12]. To establish a *prima facie* case of employment discrimination for failure to promote, Spikes's must establish that (1) she belongs to a protected class, (2) she applied for and was qualified for the position, (3) she was considered for and denied the position, and (4) an individual of similar qualifications who was not a member of

15

the protected class received the promotion. *Yandal v. Denso Air Sys. Ky.,* 2024 WL 1141014, *3 (W.D. Ky. Mar. 14, 2024) (citing *Russell v. Three Pillars,* 2022 WL 351770, *5 (6th Cir. Feb. 7, 2022)). The elements are slightly different for Spikes's discrimination resulting in termination theory. Under this theory, Spikes must show that (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was replaced by someone outside the protected class or treated differently than similarly situated non-protected employees. *Nelson v. Ball Corp.,* 656 F. App'x 131, 134 (6th Cir. 2016).

To establish a *prima facie* case for Spikes's retaliation claims, either pursuant to a failure-to-promote or termination theory, she must show four elements: (1) she engaged in an activity protected under Title VII; (2) the decision-maker knew that she had exercised her civil rights; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.. *Fannin v. Read*, 2005 WL 8164820, *3 (E.D. Ky. Oct. 31, 2005) (citing *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999)).

To establish a *prima facie* claim for Spikes's harassment claim, she must show five elements: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) Humana knew or should have known about the harassment and failed to act. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013).

At the summary judgment stage, the movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Spikes must do so by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

16

purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Here, Spikes has failed to meet her initial burden for all of her claims. Spikes has not provided any arguments *or* evidence to the Court that would satisfy the above elements. For example, in her discrimination claim, Spikes has not shown that she is a member of a protected class, that she applied for and was qualified for the position, that she was considered for and denied the position, or that an individual of similar qualifications who was not a member of the protected class received the promotion. *Yandal,* 2024 WL 1141014, at *3. Spikes is missing the requisite information, either through argument or evidence to prove any of her claims.[2]

Spikes also does not meet her burden to prove the elements of her termination theory or retaliation claim. As it relates to discrimination under a termination theory, Spikes does not provide any arguments or evidence that she was replaced by someone outside the protected class or treated differently than similarly situated non-protected employees. *See Nelson,* 656 F. App'x 131, 134 (6th Cir. 2016). Next, Spikes does not demonstrate that she engaged in an activity protected under Title VII, that the decision-maker knew that she had exercised her civil rights, or that there was a causal connection between the protected activity and the adverse employment action. *See Fannin,* 2005 WL 8164820, *3. And lastly, Spikes's harassment claim fails as a matter of law. Spikes does not demonstrate that her alleged harassment was based on her membership in a protected class, or that it was so "so severe" to alter the conditions of her workplace. The Sixth Circuit has routinely

---

[2] While Spikes does attach to certain exhibits her renewed motion, these exhibits are text messages between Spikes and other individuals identified as "Kristine" and "Ben." [DE 78-3 at 960]. These text messages do not pertain to the elements that Spikes must demonstrate to prove any of her *prima facie* cases. Instead, the text messages appear to relate to prior incidents with Conatser and his hugging of other individuals. [DE 78-3 959]. The text messages *do not* relate to *material facts* in dispute. *Celotex Corp.*, 477 U.S. at 323. Nor do the exhibits satisfy any elements that Spikes must demonstrate, such as that she was qualified for any of the promotions, or that an individual of similar qualifications who was not a member of the protected class received the promotion instead. *See Yandal,* 2024 WL 1141014, at *3.

held co-worker gossip, or text messages, are typically insufficient to meet the "severe or pervasive" prong of a harassment claim. *See, e.g., Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x. 624, 630 (6th Cir. 2013) (holding that text messages were not "so severe or pervasive that an objectively hostile environment was created" at work). Thus, Spikes has not met her burden of demonstrating an absence of a genuine issue of material fact and therefore, her motion must be denied. *Champ v. Marquette Transp. Co. LLC,* 2014 WL 2879152, \*19 (holding that because the Plaintiff has "come forward with no evidence" to support their claim, summary judgment must be denied).

For the reasons stated above, Spikes's motions [DE 77; DE 78; DE 79] are **DENIED.**

### IV.     HUMANA'S MOTION FOR SUMMARY JUDGMENT[3]

Spikes asserts four claims against Humana. Three claims arise from alleged discriminatory conduct and retaliation by Humana in violation of Title VII. [DE 1-1 at 9-12]. Spikes claims three separate instances of discrimination and retaliation: (1) the 2020 failure to promote, (2) the 2022 failure to promote, and (3) her termination. [*Id.*]. Separately, in her fourth claim, Spikes alleges that Humana is liable for the harassment she faced from her co-workers. [*Id.*].

Humana has moved for summary judgment on all claims. Humana asserts that three of the claims are time barred. [DE 67 at 740-41]. Next, in addition/alternative, Humana asserts that all

---

[3] Humana also moves for summary judgment against Spikes on "her age discriminations claims." [DE 67 at 741-42]. Humana states that the "Court dd [sic] not expressly allow Plaintiff's age discrimination claim in her December 3, 2024, Order (Dkt. 9). In the interest of completeness, Humana addresses that claim in this motion." [*Id.*]. The Court, however, did not allow Spikes's age discrimination claims to move forward *because no age discrimination claims ever existed*. Although Spikes alleges age discrimination in her EEOC letter [DE 1-1 at 23], according to Spikes's Complaint, she only asserts claims for discrimination/retaliation pursuant to "race, color" and "gender/sex." [DE 1-1 at 12]. Contrary to this information, in her depositions Spikes appears to believe that she did assert an age discrimination claim. [DE 66 at 640]. Notably, in her complaint, Spikes did not check the box for "age." Nor did she check the box for "Age Discrimination" as a basis for jurisdiction. [DE 1-1 at 12]. She also did not make any claims of age discrimination in her "Statement of Claim" in the complaint. [*Id.* at 6]. Thus, Spikes did not assert a proper claim for age discrimination, and the Court need not reach the merits of this claim.

four claims fail as a matter of law. [DE 67 at 740-41].  Nearly a month after the response deadline, Spikes responded. [DE 75]. Spikes solely asserts that the Court should deny the motion "on the basis of violating federal rule 56(b)." [*Id.* at 892]. Humana replied. [DE 76].

### A.  Time Barred

Humana claims that three of Spikes's claims are time barred: Spikes's allegation of harassment by Conatser in 2019, Spikes's failure to promote claim from 2020, and Spikes's allegation of harassment by Bryant in 2020. [DE 67 at 740-41].

A party must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful action. 42 U.S.C. § 2000e-5(e)(1). Failure to do so is dispositive, and fatal, to a Title VII discrimination claim. *Campbell v. Cracker Barrel Old Country Store,* 2020 WL 9396617, *2 (W.D. Ky. Mar. 9, 2020). Humana asserts that the "unlawful actions" are the individual acts of either discrimination or harassment. [DE 67 at 740-41]. "In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of *any act that is part* of the hostile work environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (emphasis added). Here, however, "part" of the alleged unlawful actions by Humana consisted of the termination of Spikes's employment. [DE 1-1 at 7]. This occurred on March 17, 2023. [*Id.*]. The filing of the Charge occurred on July 28, 2023, which was 134 days later. [DE 67 at 471]. This was well within the statutory timeframe of 300 days. Thus, the lawsuit and the three claims set forth above are not time barred. 42 U.S.C. § 2000e-5(e)(1); *Campbell,* 2020 WL 9396617, at *2 (stating that the "unlawful employment practice. . . occurred on the date [plaintiff] was terminated).

### B.  Merits

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In a claim for disparate treatment based on one's race or sex, "the plaintiff must establish that the adverse employment action was motivated, in part, by the plaintiff's protected-group status." *Lewis-Smith v. Western Ky. Univ.*, 85 F.Supp.3d 885, 897 (W.D. Ky. 2015). Without a discriminatory basis, an employer's discharge decision does not violate Title VII. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993) ("We have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, *that the employer has unlawfully discriminated*.") (emphasis in original).

A plaintiff must present either direct[4] or indirect evidence of racial discrimination. *Paasewe v. Ohio Arts Council*, 74 F. App'x 505, 507 (6th Cir. 2003). When a plaintiff seeks to prove discrimination through indirect evidence courts apply the three-step *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). At the first step of the *McDonnell Douglas* framework, the plaintiff must present sufficient evidence to establish a *prima facie* case of discrimination. *Id.* at 802.

To establish a *prima facie* case of employment discrimination for Spikes's failure to promote claim, she must establish that (1) she belongs to a protected class, (2) she applied for and

---

[4] There is no direct evidence of discrimination in the record or in Spikes's deposition. [*See, e.g.,* DE 66 at 517 (Spikes claiming that there were no direct comments)]. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted). "Typically, this type of smoking-gun evidence will consist of written or oral statements, most likely made by the decision-maker responsible for the adverse action against the plaintiff." *McCullough*, 123 S.W.3d at 135 (citation omitted).

was qualified for the position, (3) she was considered for and denied the position, and (4) an individual of similar qualifications who was not a member of the protected class received the promotion. *Yandal,* 2024 WL 1141014, *3. The elements are slightly different for Spikes's discrimination resulting in termination theory. Under this theory, Spikes must show that (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; (4) she was replaced by someone outside the protected class or treated differently than similarly situated non-protected employees. *Nelson,* 656 F. App'x at 134.

To establish a *prima facie* case for retaliation under Title VII—whether pursuing a failure-to-promote or a termination theory—Spikes must show four elements: (1) she engaged in a protected activity; (2) the decision-maker knew she exercised her civil rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action. *Fannin*, 2005 WL 8164820, *3.

Once a plaintiff meets her *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 803.  If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515. (emphasis in original). And although Spikes's response does not address the merits, that does not automatically entitle Humana to summary judgment. Humana must demonstrate they are entitled to judgment as a matter of law. In other words, while a party's failure to respond to specific arguments can indicate abandonment, it does not relieve the court of its duty to ensure that summary judgment is appropriate based on the properly supported material facts cited by the

21

moving party. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403–07 (6th Cir. 1992). A court must still determine whether the movant has demonstrated the absence of a genuine dispute of material fact through proper evidentiary designations. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).

### 1. Employment Discrimination

Here, it is undisputed that elements one and three of Spikes's employment discrimination claim are satisfied. That is, Spikes is a member of a protected class and was denied the position. Therefore, the Court will focus on elements two and four. [DE 67 at 743-45]. Element two addresses whether Spikes was qualified for the job. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). And element four focuses on whether Spikes was replaced by person outside the protect class or treated differently than a similarly situated non-protected employee. *Id*. To satisfy her initial burden in the shifting framework, Spikes must meet all four elements of the *McDonell Douglas* test.

#### i. 2020 Pharmacy Contracting Lead

Spikes fails to meet her initial burden. As to the second element, the Pharmacy Contracting Lead required two years of payer contracting experience. [DE 67-1 at 754-55]. Spikes admits that she did not have this experience. [DE 66 at 538]. When asked how long she has been in her current role, which consisted of payer contracting, she states only one year. [*Id.*]. This was Spikes's only experience in payer contracting. [*Id.* at 413 (discussing Spikes's previous work experience)].

Second, Spikes cannot demonstrate that the "an individual of similar qualifications" was hired. *Laster*, 746 F.3d at 727. This is because no one else was hired for the position. [DE 67-1 at 754-55; DE 66 at 538 (when asked if Humana hired someone else for the role, Spikes stated "they did not.")]. This evidence, however, factors into Humana's legitimate reasoning for not hiring

22

Spikes, not her initial burden or standing to bring the suit. *Charlton-Perkins v. Univ. of Cincinnati,* 35 F.4th 1053, 1064 (6th Cir. 2022) (holding that as it pertains to Article III standing, it would be "nonsensical" if a plaintiff could not bring a Title VII lawsuit even when no one was hired for the position).

But even if Spikes was able to meet her initial burden and demonstrate the elements of a *prima facie* claim, Humana is able to demonstrate a legitimate non-discriminatory reason for not promoting her: Spikes was not qualified for the position. The Sixth Circuit has held that not hiring an individual, when it is undisputed that the individual was not qualified, is a legitimate non-discriminatory reason. *Campbell v. Univ. of Akron*, 211 F. App'x 333, 348 (6th Cir. 2006) (holding that plaintiff's failure-to-promote theory of discrimination failed because the plaintiff "cannot show he had qualifications" for the job). Thus, Spikes's admitted lack of qualifications, her lack of two years of requisite experience, demonstrate that Humana had a legitimate non-discriminatory reason for not hiring Spikes. *Id.* Therefore, even if Spikes could meet her initial burden, her claim would still fail as a matter of law. Spikes does not, and based on the record, likely cannot demonstrate any pretext by Humana. That is, Spikes cannot demonstrate that Humana's decision was not "based in fact." *Bashaw v. Majestic Care of Whitehall, L.L.C.,* 130 F.4th 542, 552 (6th Cir. 2025). Thus, her claim fails as a matter of law.

ii.  2022 Pharmacy Contracting Professional

Spikes fails to meet her initial burden on this claim because she cannot demonstrate that she was qualified for the position. Humana considers that if an employee is on a disciplinary plan, those employees are not "qualified" for a promotion. [DE 67-1 at 755-56]. And further, Spikes cannot demonstrate that she was replaced by someone outside the protected class who had "similar qualification[s]." *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 585 (6th Cir. 2009). Mares, who was

23

hired instead of Spikes, had significant experience in medical contracting and senior direct roles throughout his career. [DE 67-1 at 756-57]. Spikes's current role was "several steps below director level." [*Id.*].

Even if Spikes could demonstrate a *prima facie* case, her claim would still fail. Humana provides a legitimate non-discriminatory reason for not promoting Spikes. That is, the disciplinary action pending against Spikes during this promotion period. [DE 67-1 at 756-57]. The Sixth Circuit has held that a "no-promotion-with-active-discipline" policy is a legitimate non-discriminatory reason for not promoting an individual. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 348 (6th Cir. 2012); *Sybrant v. Home Depot, U.S.A., Inc.,* 560 F.3d 553, 558 (6th Cir. 2009). As a result, Spikes cannot demonstrate that Humana's decision was not "based in fact." *Bashaw,* 130 F.4th 542, 552 (6th Cir. 2025). Thus, her claim fails as a matter of law.

### iii.   2023 Termination

As stated above, the elements are slightly different for Spikes's discrimination claim as it relates to her termination. Under this theory, Spikes must show that (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; (4) she was replaced by someone outside the protected class or treated differently than similarly situated non-protected employees. *Nelson,* 656 F. App'x at 134. Humana claims that because Spikes cannot demonstrate element four, that she was replaced by someone outside the protected class, or treated differently than similarly situated non-protected employees, her claim must fail as a matter of law. [DE 67 at 646-47].

For the fourth element, Spikes must "show that the 'comparables' are similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original) (citing *Stotts v. Memphis Fire Dep't*, 858 F.2d 289, 295-96 (6th Cir. 1988)). In other words, Spikes

24

must show that "[her] proposed comparators were similar in all *relevant respects . . .* and that [s]he and [her] proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (emphasis added) *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)). The Court looks to factors, including whether the "similarly-situated,' [ ] individuals . . . have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583 (citations removed).

In her deposition, Spikes states that Conatser is a proper comparator to her because he was on a disciplinary action and was found to have violated the Critical Offenses Policy. [DE 66 at 683]. Outside of this statement, Spikes provides no other evidence that she and Conatser were similarly situated.

Conatser does not satisfy the above factors to qualify as a similarly situated individual because Conatser did not engage in the "same" behavior as Spikes. Conatser was previously disciplined by Humana for hugging a separate colleague unrelated to this matter, and going to a colleague's home to assist with their home technology setup. [DE 67-8 at 786]. Humana independently concluded that those actions did *not* violate its Critical Offenses Policy. [*Id.*]. This type of behavior did not include insubordination or disrupting its workplace, like Spikes's did. Thus, Spikes "cannot be considered similarly situated to [Conatser] for the purposes of discipline because they engaged in different conduct." *Wright*, 455 F.3d at 710.

Further, Spikes and Conatser worked in different roles at Humana once Spikes was promoted to CDP. And Conatser never reported to Spikes's supervisor, Duke. This again

25

disqualifies Conatser as a similarly situated individual. *Sims-Madison v. Dana Com. Vehicle Manuf., LLC,* 2021 WL 2559766, *4-*5 (W.D. Ky. June 22, 2021) (holding that because the alleged comparator had "different job responsibilities" that makes them "not comparable"); *see also Mitchell*, 964 F.2d at 583 (the parties must have dealt with "the same supervisor"). Therefore, Spikes's *prima facie* claim fails as a matter of law. *Lusco v. DAE Indus.*, 2019 WL 4418019, at *5 (W.D. Ky. Sep. 16, 2019) (holding that because the plaintiff failed to demonstrate a *prima facie* case of discrimination by failing to provide evidence regarding similarly situated individuals, their claim was dismissed on the summary judgment standard); *Miller v. Aladdin Temp-Rite, LLC*, 72 F. App'x 378, 380 (6th Cir. 2003) (holding that plaintiff's race discrimination failed because plaintiff failed to present any evidence that they were treated differently than similarly situated employees outside of the protected class).

Even if Spikes could demonstrate a *prima facie* case of termination, Humana provides a legitimate non-discriminatory reason for Spikes's termination. *McDonnell Douglas Corp.*, 411 U.S. at 803. The Sixth Circuit has held that a violation of a company's policy is a legitimate non-retaliatory reason. *McDonald v. UAW-GM Ctr. For Human Res.*, 738 F. App'x 848, 855-56 (6th Cir. 2018); *Sybrandt*, 560 F.3d 553, 558 (6th Cir. 2008). In *McDonald,* the Sixth Circuit held that a company, following their own prescribed policies, was a "legitimate" reason to suspend a plaintiff. *McDonald*, 738 F. App'x at 855-56. And in *Sybrandt,* the Sixth Circuit affirmed that an employee violating its employers' code of conduct is a legitimate, nondiscriminatory reason for termination. *Sybrandt,* 560 F.3d at 558. Through sworn declarations, Humana has demonstrated, and it is undisputed, that Spikes violated both Human's Critical Offenses Policy, and her individualized Final Warning, prior to her termination. [DE 66-1 at 714; 67-1 at 758; DE 67-8 at 787]. Spikes does not put forth any evidence that Humana's reasons for termination "(1) have no

26

basis in fact, (2) did not actually motivate the action, or (3) were insufficient to warrant the action." *Hostettler*, 895 F.3d at 858. And it is not the Court's responsibility to go searching in the record for evidence and facts. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs"); *see also Codrington v. Dolak*, 142 F.4th 884, 897 (6th Cir. 2025) (6th Cir. July 9, 2025) (noting its approval of this Seventh Circuit philosophy); *Dean-Lis v. McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015) (also citing the Seventh Circuit quote with approval).

Therefore, even if Spikes could demonstrate a *prima facie* case of discrimination based on her termination, her claim fails as a matter of law. *Rosenthal*, 701 F. App'x at 480.

### 2. *Employment Retaliation*

As stated above, to establish a *prima facie* case for retaliation, a plaintiff must demonstrate that they "(1) engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009) (internal citations omitted). The last element requires the plaintiff to demonstrate "but-for" causation. *Beard v. AAA of Michigan*, 593 F. App'x 447, 551 (6th Cir. 2014). "But for" causation exists when the unlawful retaliation would not have occurred in the absence of the alleged action. *Id.* Within the Sixth Circuit, "temporal" proximity is insufficient to establish causation. *Kenney v. Aspen Tech., Inc.*, 965 F.3d 443, 448-49 (6th Cir. 2020). As discussed above, if Spikes demonstrates a *prima facie* case, Humana will have the burden to demonstrate a legitimate non-retaliatory reason. *McDonnell Douglas Corp.*, 411 U.S. at 803. Once that occurs, the burden shifts back to Humana do demonstrate that Humana's reason was pretextual. *Bashaw,* 130 F.4th at 552.

27

### i. 2020 Pharmacy Contracting Lead

Humana does not contest that complaining to HR may qualify as a protected activity. [DE 67 at 744]. Still, Humana claims that Spikes fails under prongs two and four. [*Id.*]. That is, that the employer knew of the exercise of the protected right and that there was a causal connection between the protected activity and the adverse employment action. *Hamilton,* 556 F.3d at 435.

Spikes cannot establish that Humana knew about, and thus retaliated against Spikes, for her sole HR complaint in 2022. Spikes cannot demonstrate that Human knew about any complaint in 2020, because none existed. [DE 67-1 at 754-55]; *Hamilton,* 556 F.3d at 435; *Bobnar v. AstraZeneca Pharm. L.P.,* 758 F. Supp. 3d. 690, 733-34 (N.D. Ohio 2024) (holding that when the employer decides a course of action prior to learning about a protected activity, plaintiff fails to meet their initial burden). And Spikes cannot prove that "but-for" the complaint in 2022, an action would not have occurred in 2020. *Beard*, 593 F. App'x at 551.

And as stated above, Humana had a legitimate non-discriminatory reason for not promoting Spikes. Spikes's lack of two years of experience disqualified her from the position. *Campbell*, 211 F. App'x at 348. And Spikes has not put forward any evidence demonstrating pretext. Thus, her claim fails as a matter of law.

### ii. 2022 Pharmacy Contracting Professional

Spikes cannot meet her initial burden. Again, Humana does not contest that complaining to HR may qualify as a protected activity. [DE 67 at 744]. Humana claims that Spikes's claim of 2022 retaliation fails because Spikes cannot demonstrate prongs two and four. [*Id.*].

It is undisputed that Duke did not know that Spikes had complained to HR when the decision was made  not promote her and to hire Mares. [De 67-1 at 755; DE 66 at 512 (when asked if Spikes ever told Duke about the complaint, Spikes replied "I did not")]. This fact *alone* likely

28

renders this claim dead. *Scott v. Eastman Chem. Co.,* 275 F. App'x 466, 482 (6th Cir. 2008) ("it is fairly clear from Sixth Circuit case law that employer knowledge of a plaintiff's protected activity is required.")

But further, Spikes cannot demonstrate prong four, a causal connection. Here, the time gap between the employment action and potential protected activity was six months. [DE 67 at 745]. The Sixth Circuit has held that a time frame of sixth months is insufficient to support an inference of "causal connection" between the protected activity and the adverse employment action. *Tennial v. UPS*, 840 F.3d 292, 309 (6th Cir. 2016) ("[t]emporal proximity of more than six months, standing alone, has not been found to support an inference of retaliatory discrimination absent other compelling evidence."); *Miller v. City of Canton*, 319 F. App'x 411, 421-22 (6th Cir. 2009) (holding a six month gap between protected activity and alleged retaliatory action are insufficient to establish a causal connection); *Bush v. Compass Grp. USA, Inc.*, 194 F. Supp. 3d 580, 586-87 (W.D. Ky. 2016) ("the Court finds that a four-to eight-month gap is not sufficient temporal proximity to establish the requisite causal connection.").

Even if Spikes were to meet all four elements, as stated above Humana has provided a legitimate non-discriminatory reason for not promoting Spikes. A "no-promotion-with-active-discipline" policy is a legitimate non-discriminatory reason for not promoting an individual. *Chattman*, 686 F.3d 348. This is true, even if Spikes disagrees with this decision. *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with"; rather, it forbids them only from making decisions "for impermissible, discriminatory reasons").

29

iii.   2023 Termination

Spikes fails to meet her initial burden on this theory as well. Again, Humana does not contest that complaining to HR may qualify as a protected activity. [DE 67 at 744]. Humana claims that Spikes fails to demonstrate, at least, prongs two and four. That is, that Duke knew of Spikes's complaint to HR and that there was a causal connection. [DE 67 at 747-48].

Humana provides uncontested evidence that Duke was not aware of Spikes's complaint. [DE 67-1 at 755]. Here, the time gap between the employment action and potential protected activity was nine months. [DE 67 at 746]. And further, nine months is insufficient as a matter of law to establish an inference of causation within the Sixth Circuit. *Miller*, 319 F. App'x at 421-22 (holding that a six month gap insufficient to show causation); *Tennial,* 840 F.3d at 309 ("[t]emporal proximity of more than six months, standing alone, has not been found to support an inference of retaliatory discrimination absent other compelling evidence."); *Bush v*, 194 F. Supp. 3d at 586-87 ("the Court finds that a four-to eight-month gap is not sufficient temporal proximity to establish the requisite causal connection.").

And lastly, Spikes's meeting with Duke in March 2023, is an intervening event between the filing of the complaint and Spikes's eventual termination which would "dispel" any inference of proximity, if any existed. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012); *see also Kuhn v. Washtenaw Cnty.,* 709 F.3d 612, 629 (6th Cir. 2013) (holding that a plaintiff cannot demonstrate a *prima facie* case of retaliation when an intervening legitimate reason to take an adverse employment action occurs). Thus, Spikes fails to demonstrate a *prima facie* case of retaliation.

And as stated above, even if Spikes could demonstrate a *prima facie* case of discrimination, Humana provides a legitimate non-discriminatory reason for Spikes's termination. *McDonnell*

*Douglas Corp.*, 411 U.S. at 803. The Sixth Circuit has held that a violation of a company's policy is a legitimate non-retaliatory reason for terminating an employee. *McDonald*, 738 F. App'x 855-56. Nor has Spikes demonstrated any evidence of pretext. Therefore, Spikes's retaliation claim fails as a matter of law. *Hamilton*, 556 F.3d at 442 (Griffin, J. dissenting) (reiterating that the burden is on the Plaintiff to demonstrate evidence of pretext, otherwise a claim must be dismissed).

### 3. Harassment and/or Hostile Work Environment

To demonstrate a claim of harassment, Spikes must show that (1) that she belonged to a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her membership in a protected class, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) Humana knew or should have known about the harassment and failed to act. *Waldo,* 726 F.3d at 813. As mentioned above, courts also apply the *McDonnel Douglass* burden-shifting framework for harassment claims. If the plaintiff satisfies the above-mentioned test, the burden shifts to the defendant to proffer a legitimate, non-discriminatory explanation for the adverse employment action. *Creggett v. Jefferson Cnty. Bd. Of Educ.,* 491 F. App'x 561, 565 (6th Cir. 2012). If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's legitimate, nondiscriminatory explanation is merely a pretext. *Id.* Pretext may be demonstrated by that the defendant's reasoning had no basis in fact, did not actually motivate defendant's conduct, or was insufficient. *Zambetti v. Cuyahoga Cmty. Coll.,* 314 F.3d 249, 258 (6th Cir. 2002).

Spikes claims that she was "harassed" by her teammates. [DE 1-11 at 12-14]. Specifically, that Bryant "gossiped" about Spikes to other individuals at Humana, including her boss, Duke.

31

[DE 1-11 at 12-14; DE 66 at 513-14]. Humana asserts that this claim is both time-barred,[5] and fails as a matter of law.

Spikes has not put forward any reasoning in her response to summary judgment that she meets this burden as it relates to harassment. [*See* DE 75]. Still, as applied for the other claims, Humana must demonstrate they are entitled to judgment as a matter of law and the Court must still determine whether the movant has demonstrated the absence of a genuine dispute of material fact through proper evidentiary designations. *Street*, 886 F.2d at 1479–80.

Neither party contests that Spikes is a member of a protected class. But although Spikes belongs to a protected class, Spikes cannot demonstrate that her harassment was based on her *membership* in a protected class. *Waldo,* 726 F.3d at 813. The alleged harassment relates to Spikes's dating life generally. [DE 66 at 522]. Spikes provides no evidence that these comments were tied to Spikes's race or sex. "In Title VII actions it is important to distinguish between harassment and discriminatory harassment in order to ensure that Title VII does not become a general civility code." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (citations omitted). Thus, Spikes fails to demonstrate this element. *See Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998) (Title VII "does not prohibit all verbal or physical harassment in the workplace; it is directed only at "'discriminat[ion] . . . because of sex.'").

Even if Spikes could demonstrate that the comments were made pursuant to her protected class, Spikes cannot demonstrate that the "harassment was sufficiently severe or pervasive" to alter the conditions of her employment. *Waldo,* 726 F.3d at 813. On the contrary, the record reflects that Duke, with no knowledge of the comments, continually attempted to make accommodations for Spikes, and to work through any trouble Spikes was facing at work. [DE 67-1 at 754]. And the

---

[5] *See* discussed *supra* Section IV.A.

Sixth Circuit has held that co-worker gossip is insufficient to meet the "severe or pervasive" prong of a harassment claim. *See, e.g., Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x. 347, 354 (6th Cir. 2013) (holding that name-calling and rumor spreading was insufficient).

And lastly, it is unclear if Humana knew about the harassment and failed to act. Spikes asserts that she "think[s] at one point" she mentioned to Duke that her coworkers were "a handful." [DE 66 at 661-62]. Although Spikes *may* have told Duke, she did not report the harassment to HR. [*Id.*]. Humana did not act in anyway in response to these comments. However, examining the facts most favorable to Spikes, it is plausible that a jury could find she meets the last element, prong five. *Sagan*, 342 F.3d at 497 (the Court will review the evidence in the light most favorable to the non-moving party). However, even with the fifth prong met, Spikes has failed to demonstrate prongs two, three, and four of her harassment claim and thus, it fails as a matter of law. *Waldo*, 726 F.3d at 813 (holding that a plaintiff must demonstrate all elements of a harassment claim).

Even assuming that Spikes demonstrated all elements of a *prima facie* claim of harassment, the burden would simply shift back to Humana to demonstrate a legitimate, non-discriminatory explanation for the adverse employment action. *Creggett.,* 491 F. App'x 561, 565.

Humana states that in accordance with their policies, Spikes was terminated for violating both the Critical Offenses Policy, which includes poor performance, and her Final Warning. [DE 67 at 738; DE 67-1 at 576 (Spikes was under disciplinary action for "performance issues")]. Poor performance is a permitted non-discriminatory reason for termination. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008). The Sixth Circuit has also held that a violation of a company's policy is a legitimate non-retaliatory reason. *McDonald,* 738 F. App'x at 855-56. Thus, Humana has provided two legitimate non-discriminatory reasons for Spikes's termination.

33

Now, the burden shifts back to Spikes. *McDonnel Douglas Corp.,* 411 U.S. at 804-05. But again, Spikes does not put forth any evidence that Humana's reasons "(1) have no basis in fact, (2) did not actually motivate the action, or (3) were insufficient to warrant the action." *Hostettler*, 895 F.3d at 858. And it is not the Court's responsibility to go searching in the record for evidence and facts. *Dunkel*, 927 F.2d at 956.

Thus, even if a *prima facie* case of harassment is found, her claim fails as a matter of law. *Rosenthal.*, 701 F. App'x at 480.

### C.  Spikes's Response

Spikes asserts that the Court should deny Humana's motion for summary judgment because Humana has not responded to Spikes's discovery requests and that Humana "submitted a summary judgement [sic] later than 30 days past the discovery date." [DE 75 at 892].

First, Humana's motion for summary judgment was timely. The Court's scheduling order set dispositive motions to be due no later "than December 16, 2025." [DE 38 at 186]. Humana filed its motion on December 16, 2025. [DE 67].

Second, Spikes asserts that the Court should deny the motion pursuant to Fed. R. Civ. P. 56(d). [DE 75 at 892]. Fed. R. Civ. P. 56(d) states that a court should deny a motion for summary judgment if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The burden is on the party seeking additional discovery. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). The party must demonstrate, through affidavits and with "some precision the materials [s]he hopes to obtain with further discovery, and exactly how [s]he expects those materials would help [her] in opposing summary judgment." *Id.* (citations omitted).

34

Here, Spikes fails to meet her burden. She has not demonstrated with any precision the materials she needs to oppose Humana's motion. Humana has continuously complied with all discovery requirements in the matter, and the parties have had multiple status conferences with Magistrate Judge Lindsay. Most recently, Spikes's motion to compel was denied in part and granted in part. [DE 81]. Notably, the only part of Spikes's motion that the Court granted was to *re-send* a spreadsheet Humana had already provided. [*Id.* at 1069 ("Defendant shall again send. . .")]. Thus, not only does Spikes's response fail to state the materials she needs, but Humana has complied with all discovery requests in this matter through this date.

Therefore, the Court rejects Spikes's argument to deny Humana's summary judgment pursuant to Fed. R. Civ. P. 56(d). *Summers*, 368 F.3d at 887; *Lewis v. ACB Business Serv., Inc.,* 135 F.3d 389, 409 (6th Cir. 1998) (holding that bare or vague assertions of the need for discovery are insufficient).

## V.    Conclusion

For the reasons stated above, and the Court being otherwise advised the Court **ORDERS:**

1. Spikes's motion for leave, motion for review, and updated motion for review [DE 77; DE 78; DE 79] are **DENIED.**

2. Humana's motion for summary judgment [DE 67] is **GRANTED.**

3. The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

May 18, 2026

35